UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| ROBIN E. A. STEVENS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-14-224-HE |
|  | ) |  |
| CAROLYN W. COLVIN, | ) |  |
| Acting Commissioner of the | ) |  |
| Social Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## REPORT AND RECOMMENDATION

Plaintiff Robin E. A. Stevens brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R.__"). The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her applications for DIB and SSI on February 10, 2010. R. 243-51, 252-53, 280-83. Plaintiff alleged a disability onset date of January 1, 1997, and sought benefits on the basis of radiculitis, blackouts, hypertension, and degenerative disc disease. R. 280, 285. Following denial of her applications initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 9, 2012. R. 41-73, 138-42, 149-52, 159-61, 167-68. Plaintiff attended the video hearing without a representative. R. 21, 44-45.

The ALJ issued an unfavorable decision on May 7, 2012. R. 18-32. The ALJ followed the five-step sequential evaluation process prescribed by the Commissioner to determine whether a claimant, like Plaintiff, is disabled and therefore entitled to DIB and SSI. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). As an initial matter, the ALJ first noted that the record included a previous decision by the SSA, dated January 21, 2010, which Plaintiff had not appealed and was not requesting be reopened or revised. R. 21, 77-86. The SSA had found that Plaintiff was not disabled through the date of the decision. R. 85-86. Accordingly, the ALJ denied Plaintiff's applications for the period from January 1, 1997, through January 21, 2010, under the doctrine of *res judicata*. R. 22. The ALJ then proceeded to evaluate whether Plaintiff was disabled on or after January 22, 2010. R. 22.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 1997. R. 24; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the severe

impairments of "disorders of the lumbar spine, discogenic and degenerative, status post August 2011 L5-S1 laminectomy, discectomy, and foraminotomy; chronic obstructive pulmonary disease; coronary artery disease; premature ventricular contractions, 2011 onset; hypertension; and obesity."  R. 24; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 26; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on her impairments.  R. 27-30; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e).  The ALJ found that Plaintiff had the RFC to perform "sedentary work," subject to additional exertional and nonexertional limitations:

> [C]laimant can only: occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; can sit for about twenty (20) minutes at any one time before having to stand at the workstation for about three (3) minutes; must avoid exposure to workplace hazards, such as dangerous moving machinery, unprotected heights, open flame, and the operation of any kind of moving vehicle, equipment, or apparatus; must avoid exposure to irritants, such as dusts, fumes, smoke, gases and poor ventilation; must avoid exposure to temperatures of 80 degrees or more and 60 degrees or less; and must avoid exposure to high humidity or wetness.

R. 27; *see* 20 C.F.R. §§ 404.1567(a) (defining "sedentary work"), 416.967(a) (same).  In light of this RFC, the ALJ found at step four that Plaintiff was unable to perform her past relevant work.  R. 30; *see* 20 C.F.R. §§ 404.1520(f), 416.920(f).

At step five, the ALJ considered whether there are jobs that exist in significant numbers in the national economy that Plaintiff could perform in light of Plaintiff's age,

education, work experience, and RFC. R. 31. Taking into consideration a vocational expert's testimony regarding the degree of erosion to Plaintiff's occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform the unskilled, sedentary-exertion occupations of Telephone Quotation Clerk, New Account Interviewer, and Call Out Operator. R. 31. The ALJ found that these occupations offer jobs that exist in significant numbers in the national economy. R. 31; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. R. 32; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

After the ALJ's unfavorable decision of May 7, 2012, Plaintiff requested review by the Appeals Council, submitting additional medical records and an accompanying brief by an attorney. *See* R. 15, 370-75, 581-644. The Appeals Council ordered that the new evidence and brief be accepted as part of the record. R. 5. Stating that it had considered the new evidence and brief, and determining that these materials did not provide a basis for changing the ALJ's decision, the Appeals Council denied review. R. 1-4. Accordingly, the ALJ's unfavorable decision is the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169

4

(10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

Plaintiff alleges three claims of error. With respect to the ALJ's RFC analysis, Plaintiff contends that the ALJ erred by (1) failing to fully develop the record regarding functional limitations that impacted the RFC (Pl.'s Br. at 3-7; Pl.'s Rep. at 3-5); and (2) failing to properly evaluate Plaintiff's credibility (Pl.'s Br. at 9-12; Pl.'s Rep. at 5, 8-10). With respect to the ALJ's step-five analysis, Plaintiff contends that the ALJ erred by failing to obtain a reasonable explanation for conflicts between the VE's testimony and the DOT. Pl.'s Br. at 8-9; Pl.'s Rep. at 6-8.

ANALYSIS

The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of. . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); 96-7p, 1996 WL 347186, at *1 (July 2, 1996). The ALJ is required to closely and affirmatively link his credibility findings to substantial evidence in the record. *See Wilson*, 602 F.3d at 1144. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Id.* (internal quotation marks omitted). The Tenth Circuit set forth in *Wilson* an illustrative list of factors that should be considered in assessing the credibility of subjective complaints, including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation marks omitted); *see also* SSR 96-7p, 1996 WL 473186, at *3.

Here, the ALJ recited Plaintiff's testimony of pain in her back and legs resulting from her musculoskeletal impairments, as well as fatigue and shortness of breath resulting from her cardiological and pulmonary impairments. R. 28. The ALJ noted that Plaintiff's aunt and mother corroborated Plaintiff's testimony. R. 28. Upon evaluation,

6

the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 28. As support for this finding, the ALJ pointed to three factors: (1) contradictory statements by Plaintiff; (2) inconsistency between Plaintiff's alleged symptoms and her daily activities; and (3) inconsistency between Plaintiff's alleged symptoms and the medical evidence. R. 28-29. The undersigned will address each of these in turn.

1. Plaintiff's statements regarding grade level

The ALJ found that Plaintiff's "inconsistent statements diminish her credibility." R. 29. The sole example of this cited by the ALJ is that Plaintiff testified that she completed the eighth grade but also stated in one report that she only completed the sixth grade. R. 28-29; *see also* R. 49 (testifying that the last grade she finished was the eighth grade); R. 286 (reporting she completed eighth grade); R. 320 ("I have a 6th grade education"). Plaintiff argues that "this was a minor discrepancy" and cites to *Hamlin v. Barnhart* to argue that "where the 'discrepancies are minor at best . . . [they] cannot serve to support a lack of credibility finding.'" Pl.'s Br. at 10 & n.9 (quoting *Hamlin*, 365 F.3d 1208, 1221 (10th Cir. 2004)). The Commissioner has conceded that the difference in Plaintiff's statements regarding her education was "admittedly minor," but argues that even minor inconsistencies unrelated to Plaintiff's alleged disability are "reasonable bases" to find Plaintiff's credibility diminished. Def.'s Br., Doc. No. 12, at 10 (citing 20 C.F.R. § 404.1529(c)(4); SSR 96-7p, 1996 WL 374186, at *5). The undersigned

7

concludes that while this minor discrepancy in Plaintiff's statements is relevant to some limited extent, it is not sufficient in itself to support the ALJ's finding that Plaintiff's testimony was not credible. *See Hamlin*, 365 F.3d at 1221.

2. Plaintiff's activities

In finding that "[Plaintiff's] testimony as to significant limitations is not supported," the ALJ pointed to Plaintiff's reported activities "such as visiting with friends, cross stitch, watching television, lifting a gallon of milk, using a cell phone to text message, and walking 50 to 60 feet." R. 29. As noted by the ALJ earlier in his decision:

> [Plaintiff] testified . . . that . . . she can rinse off the dishes, can make the bed, and vacuum. She reported that she can do activities, but has to sit down after a few minutes. She shops once a month. She takes care of her bull dog. She report[s] cross stitch as a hobby. She visits her mother and people come to her house. She talks on the phone. She reported that she has been on Facebook a couple of times. She uses a cell phone to [text] message. She reported that she can walk 50 to 60 feet. She can lift a gallon of milk.

R. 28.

Plaintiff's testimony regarding many of these activities was more qualified than indicated by the ALJ. *See* R. 52, 57-61. For instance, Plaintiff testified that she rinses a cup or bowl less than once a week (R. 58); the only house cleaning she does is making her bed and vacuuming but she can only vacuum a little bit at a time because she has to sit and rest (R. 58); she cross-stitches and crochets "a little bit" (R. 59); she does not visit friends or relatives except going to her mother's house "every once in a while like for holidays" (R. 59); she has used the computer to get on Facebook a couple of times but

8

does not use it for email, internet, or games (R. 60-61); and she uses her cell phone and texts on it "every once in a while" (R.61). The ALJ accurately noted Plaintiff's testimony that she takes care of her dog (R. 59); she goes shopping once a month (R. 59); and friends visit her and she visits with people on the phone (R. 59). The ALJ did not mention Plaintiff's testimony that she does not do laundry or any type of outdoor work (R. 58); she does not drive (R. 58); and she does not go out to movies, church, or any types of entertainment (R. 59, 60). Additionally, Plaintiff's testimony regarding being able to lift a gallon of milk was "I'm getting to the point where I can't even pull the gallon of milk out because if I do I'm going to drop it because it sends that pain in my back down into my legs and then my legs start feeling like they're going to go out." R. 52.

Properly viewed, the activities of daily living testified to by Plaintiff are relevant to an analysis of Plaintiff's credibility regarding the intensity, persistence, and limiting effects of her alleged symptoms, but would not by themselves support the ALJ's finding that Plaintiff's testimony was not credible. *See Krauser v. Astrue*, 638 F.3d 1324, 1332-33 (10th Cir. 2011) (discussing necessity of looking at claimant's actual activities and stating that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity" (internal quotation marks omitted)); *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that plaintiff's lifestyle consisting of limited and sporadic activities "does not contradict a claim of disabling pain" and ALJ's citation of such daily activities did not indicate substantial evidence refuting plaintiff's credibility or claims of pain); *Thompson v. Sullivan*, 987

F.2d 1482, 1490 (10th Cir. 1993) (finding that an "ALJ may not rely on minimal daily activities as substantial evidence" to determine that a claimant's claims of disabling pain are not credible); *accord Hamlin*, 365 F.3d at 1221 (same).

### 3. Plaintiff's medical history

Because the prior two considerations would not by themselves, or in combination, stand as substantial evidence in support of the ALJ's finding that Plaintiff's testimony was not credible, the undersigned turns to whether the third consideration—inconsistency with the medical evidence—provides the necessary support. This question, however, is affected by the procedural issue that relevant evidence was accepted as part of the record after the ALJ's decision.

When the Appeals Council denies review but expressly accepts new evidence into the record, it is not required to discuss its analysis of that evidence. *See Martinez v. Astrue*, 389 F. App'x 866, 868-69 (10th Cir. 2010). This is true even of opinion evidence that an ALJ would have been required to expressly consider, such as a treating physician or psychologist opinion. *See Robinson v. Astrue*, 397 F. App'x 430, 432 (10th Cir. 2010). On appeal, however, the reviewing court still must decide whether the disability determination is supported by substantial evidence in the record as a whole, specifically including the new evidence that the Appeals Council made part of the record. *Martinez*, 389 F. App'x at 869; *Foy v. Barnhart*, 139 F. App'x 39, 42 (10th Cir. 2005). *See generally Krauser v. Astrue*, 638 F.3d 1324, 1328-29 (10th Cir. 2011); 20 C.F.R. §§ 404.970(b), 416.1470(b) ("In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional

evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). As a consequence of these principles, the reviewing court may be called upon to analyze an ALJ's opinion on the basis of evidence not considered or discussed by the ALJ.

The resulting question for the reviewing court is "whether the qualifying new evidence upsets [the ALJ's disability determination]." *Martinez*, 389 F. App'x at 869. The undersigned has previously explained that if the evidence in the record relevant to that question is so one-sided as to permit a ready answer by a reviewing court, the court may proceed to conclusively determine whether benefits should or should not have been awarded. *See Stringer v. Colvin*, No. 13-1053-HE (report and recommendation of Oct. 31, 2014), *adopted*, 2014 WL 6879083 (W.D. Okla. Dec. 4, 2014). On the other hand, if that question turns on competing evidence that is more properly evaluated in the first instance by the finder of fact, the court may remand for further proceedings by the Commissioner. *See Hickey v. Colvin*, No. 12-1277-C, Report and Recommendation at 8-12 (W.D. Okla. Feb. 25, 2014), *adopted*, Order (W.D. Okla. Mar. 18, 2014). Here, remand for additional findings is required.

The ALJ reviewed much of the pertinent evidence regarding Plaintiff's back and leg pain, including evidence that Plaintiff underwent back surgery on August 30, 2011. *See* R. 29-30 (citing medical evidence dated May 2009 (Ex. B4F); Oct. 23, 2009 (Ex. B5F); April 2010 (Ex. B7F); Aug. 19, 2011 (Ex. B18F, p. 19); Aug. 1, 2011 (Ex. B18F, p. 21; Ex. B13F, p. 7; Ex. B12F, pp.8-9); Aug. 30, 2011 (Ex. B18F, p. 13; Ex. B13F, pp. 6-7); Oct. 28, 2011 (Ex. B18F, p. 3); Jan. 17, 2012 (Ex. B16F, p. 1); Jan. 6, 2012 (Ex.

B18F)). The ALJ correctly noted that, on October 28, 2011, in Plaintiff's second post-operative visit with Stephen Ofori, MD, Plaintiff reported that "her [pre-operative] low back pain and leg symptoms . . . have resolved," and "[s]he has occasional pain when she undertakes activities that put too much stress on her back." *See* R. 29, 560. The ALJ also correctly noted that at Plaintiff's January 6, 2012 visit with Dr. Ofori, "there was no tenderness or palpitation at the incision [and] [a]ctivities were encouraged." *See* R. 30, 558. The ALJ did not note Dr. Ofori's report from the January 2012 visit that Plaintiff continued to have a "slightly reduced" range of motion of her lumbosacral spine, and that because Plaintiff "stated she was still hurting" Dr. Ofori indicated he would request an MRI. *See* R. 30, 558.

After the ALJ's decision, Plaintiff submitted additional medical records, including the referenced MRI. *See* R. 370-75, 581-644 (Exhibits B19F, B20F, B21F, and B22F). These records were accepted by the Appeals Council and made part of the record. R. 5. Among other things, these records show that on February 17, 2012, Plaintiff visited Dr. Ofori and reported that "she fell at home last week and has since then had an increase in her low back pain [which] now radiates to both legs and she has numbness and tingling sensation of the legs." R. 637. Plaintiff further reported that "[t]he Lortab she is taking now barely alleviates the pain." R. 637. At this appointment, Dr. Ofori recommended an MRI scan of Plaintiff's lumbosacral spine "for further evaluation of her worsening back complaints." R. 637. The MRI was taken on March 2, 2012, and indicated "[d]isk bulge and facet osteoarthropathy at L5-S1 [that] contribute to mild to moderate bilateral neural foraminal stenosis," with the possibility of scar encroachment. R. 633-34. Further, the

12

MRI indicated, at the L3-4 and L4-5 levels, "disk bulge and facet osteoarthropathy [that] contribute to mild bilateral neural foraminal stenosis." R. 633-34.

As a follow-up to this MRI, Plaintiff saw Dr. Ofori on March 9, 2012. At this visit, Dr. Ofori noted that Plaintiff "continues to complain of low back pain radiating to both lower extremities [with] [t]he left leg symptoms [being] worse than the right [but reporting] the symptoms have improved slightly since . . . a month ago." R. 631. Dr. Ofori described the MRI scan as showing "epidural scarring around the L5-S1 nerve roots[,] very mild protrusion at the disc, but moderate foraminal stenosis." R. 631. Additionally Dr. Ofori advised Plaintiff that "further care for her back condition should be nonsurgical unless her symptoms worsen significantly." R. 631.

On March 7, 2012, Plaintiff saw Juan Villazon, MD, a neurologist, due to unusual sensations in her head and a possible history of seizures. R. 621-25. In addition to other symptoms, Dr. Villazon noted that Plaintiff had back and leg pain, R. 621-22, and recorded one of his "clinical impression[s]" as "[c]hronic back and leg pain [which] is an old problem associated with discogenic disease and radiculopathy [and is] [s]till associated with sleep and severe functional limitation especially with ambulation, [Plaintiff] uses a cane." R. 624. Plaintiff had a follow-up visit with Dr. Villazon on April 4, 2012. R. 619-20. At this appointment, Dr. Villazon reviewed the results of Plaintiff's March 2, 2012 MRI, describing them as "reveal[ing] a disk bulge and facet arthropathy at L5-S1 with moderate bilateral neuroforaminal stenosis," and again noted back and leg pain as one of his clinical impressions. R. 620.

13

Plaintiff visited Dr. Ofori again on July 13, 2012, at which time Dr. Ofori noted that "[Plaintiff] continues to complain of low back pain radiating to both lower extremities. She reports numbness and tingling sensation of the legs.[1] The pain is usually worsened by activities involving stress on her back." R. 629. In addition to noting a "slightly reduced" range of motion of the lumbosacral spine, Dr. Ofori "indicated to [Plaintiff] that if her low back pain continues to bother her, she may need further surgery for decompression of the L5-S1 level and lumbar fusion and pedicle screw fixation at this level." R. 629.

In finding that Plaintiff's testimony was not fully credible because it was inconsistent with the medical evidence, the ALJ specifically pointed to the fact that Plaintiff had a "successful" back surgery and stated that "[t]he record indicates that subsequent to the surgery [Plaintiff] reported only 'occasional pain.'" R. 29. The post-hearing medical records described above present evidence that is sufficiently contrary to the ALJ's conclusion that the undersigned may not say, in the first instance, that it would not impact the ALJ's credibility and RFC findings. Plaintiff's testimony of subjective complaints, and her RFC, should be evaluated based on the record as a whole. If that evaluation were to result in greater limitations than previously determined, additional

---

[1] This record was created after the date of the ALJ's decision and, thus, after the period of time at issue in the ALJ's decision. However, because the record "is pertinent evidence in that it may disclose the severity and continuity of impairments existing" during the time at issue, it is relevant to the disability determination and should be considered. *See Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 479 (10th Cir. 1993) (explaining that medical records that postdate the relevant time frame may be considered if they relate back to the relevant time frame).

14

vocational evidence would then be required to analyze whether jobs exist in significant numbers in the national economy that the Plaintiff could perform.  These are evidentiary decisions for the finder of fact and not a reviewing court.

In short, the new and material evidence accepted into the record by the Appeals Council "upsets" the underlying disability determination of the ALJ, s*ee Martinez v. Astrue*, 389 F. App'x at 869, and presents evidentiary questions not so one-sided as to permit consideration in the first instance by a reviewing court rather than the proper finder of fact.  Accordingly, the matter should be remanded to the Commissioner for further analysis of Plaintiff's RFC, specifically including the credibility of Plaintiff's testimony regarding pain and other subjective symptoms of her impairments.  In recommending remand, the undersigned does not suggest whether the post-hearing medical evidence requires the imposition of any additional exertional or nonexertional limitations.

Based on the recommendation that this matter be reversed and remanded, as set forth above, the undersigned need not address the remaining claims of error raised by Plaintiff.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned

Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by April 14, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 31st day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE